**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 24-2161**

———————

CHERRY GROVE BEACH GEAR, LLC; DEREK CALHOUN; JACQUELINE CALHOUN,

Plaintiffs - Appellants,

v.

CITY OF NORTH MYRTLE BEACH,

Defendant - Appellee.

———————

Appeal from the United States District Court for the District of South Carolina, at Florence. Joseph Dawson, III, District Judge.  (4:22-cv-02198-JD)

———————

Argued:  October 22, 2025                     Decided:  December 23, 2025

———————

Before DIAZ, Chief Judge, GREGORY and BENJAMIN, Circuit Judges.

———————

Affirmed by published opinion.  Judge Gregory wrote the opinion, in which Chief Judge Diaz and Judge Benjamin joined.

———————

**ARGUED:**  Kenneth Ray Moss, II, WRIGHT, WORLEY, POPE, EKSTER & MOSS, North Myrtle Beach, South Carolina, for Appellants.  Elbert Stockman Dorn, Sr., MAYNARD NEXSEN PC, Myrtle Beach, South Carolina, for Appellee.  **ON BRIEF:** George N. Spirakis, WRIGHT, WORLEY, POPE, EKSTER & MOSS, North Myrtle Beach, South Carolina, for Appellants.  Marguerite S. Willis, Kirsten E. Small, Greenville, South Carolina, Michael Parente, MAYNARD NEXSEN PC, Columbia, South Carolina, for Appellee.

———————

GREGORY, Circuit Judge:

The City of North Myrtle Beach, South Carolina prohibits most commercial activities on its beaches. When Cherry Grove Beach Gear, LLC ("CGBG") began to offer beach equipment delivery and setup services on the City's beaches, the City updated its ordinances to clarify that only City officials were permitted to set up beach equipment professionally on public beaches. CGBG brought this action against the City claiming violations of the Sherman Antitrust Act, alleging that the City had unlawfully claimed a monopoly over beach equipment delivery and installation. The district court granted summary judgment for the City, concluding that the city enjoys state action immunity from federal antitrust liability. We agree, and therefore we affirm.

I.

Plaintiff/Appellants Derek and Jacqueline Calhoun own and operate Cherry Grove Beach Gear, LLC. Beginning in 2020, CGBG offered beach chairs, beach umbrellas, and other beach wares for rent to use on beaches in and around the City of North Myrtle Beach. CGBG also provided the opportunity to purchase equipment setup services, wherein CGBG would deliver the equipment to the beach and set it up for the customer's use.

In April 2021, city officials informed CGBG that the City Code prohibited CGBG from delivering and setting up rented beach equipment on City beaches. CGBG continued its delivery and setup services, believing that the cited ordinance did not prohibit its activities. The City warned CGBG at least twice more, to no avail. J.A. 43, 48. CGBG competitors complained about CGBG's continued beach-equipment setup. J.A. 77, 290,

2

293–96.  In response, the City passed an additional ordinance in June 2022 that both parties agree prohibited CGBG from setting up beach equipment on the beach.  Under the 2022 ordinance, only City officials may professionally set up rented beach equipment on City beaches.  CGBG continued their delivery and setup services.  J.A. 225.  The City issued Derek Calhoun and CGBG multiple citations for noncompliance with the ordinances.  J.A. 225, 127–30.

CGBG brought suit in July 2022 alleging, among other claims, that the City had "unlawfully sought to impose an unlawful monopoly on the rentals of beach chairs, beach umbrellas and related beach wares on the entirety of the beaches" in the City, in violation of federal antitrust law.  J.A. 18–19.  At summary judgment, the district court ruled that the City's ordinance receives state-action immunity from federal antitrust enforcement.  We review a district court's grant of summary judgment de novo.  *Shaw v. Foreman*, 59 F.4th 121, 129 (4th Cir. 2023).

## II.

Under the state action immunity doctrine—or *Parker* doctrine—federal antitrust laws do "not apply to anticompetitive restraints imposed by the States 'as an act of government.'"  *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 370 (1991) (quoting *Parker v. Brown*, 317 U.S. 341, 352 (1943)).  However, cities "are not themselves sovereign," and therefore state action immunity takes hold only when cities act "pursuant to state policy to displace competition with regulation or monopoly public service."  *FTC v. Phoebe Putney Health Sys., Inc.*, 568 U.S. 216, 225 (2013); *City of Lafayette v. La.*

3

*Power & Light Co.*, 435 U.S. 389, 413 (1978).  The state policy relied upon need not be "specific, detailed legislative authorization," but it must be "clearly articulated and affirmatively expressed." *Cmty. Commc'ns Co. v. City of Boulder*, 455 U.S. 40, 51 (1982); *City of Lafayette*, 435 U.S. at 415.

The Supreme Court has clarified "just how clearly a state policy must be articulated for a municipality to be able to establish that its anticompetitive activity constitutes state action." *W. Star Hosp. Auth. v. City of Richmond*, 986 F.3d 354, 358 (4th Cir. 2021) (quoting *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 40 (1985)).  State immunity attaches "where anticompetitive activity is the 'foreseeable result' of a state policy—that is, where it is 'clear that anticompetitive effects logically would result' from a given policy or where a regulatory structure inherently displaces unfettered business freedom." *Id.* (quoting *Hallie*, 471 U.S. at 42).  But a legislature need not "expressly state in a statute or its legislative history that the legislature intends for the delegated action to have anticompetitive effects." *Id.* (quoting *Hallie*, 471 U.S. at 43).  The balance between federal antitrust law and state sovereignty is designed to "preserv[e] to the states their freedom . . . to administer state regulatory policies free of the inhibitions of the federal antitrust laws without at the same time permitting purely parochial interest to disrupt the Nation's free-market goals." *Hallie*, 471 U.S. at 39 (quoting *City of Lafayette*, 435 U.S. at 415-16).

For state action immunity to attach, the state legislature must have anticipated significant municipal involvement in an industry.  Supreme Court precedent makes clear that a general grant of "home rule" authority is insufficiently specific to earn state-action immunity. *City of Boulder*, 455 U.S. at 56.  In *FTC v. Phoebe Putney Health System, Inc.*,

4

the Supreme Court considered municipal efforts to consolidate hospital ownership pursuant to a state statute authorizing hospital authorities to purchase other hospitals. *Phoebe Putney*, 568 U.S. 216, 220–21. Though the statute plainly anticipated that substate actors would be involved in the market, the "simple permission to play in a market does not foreseeably entail permission to roughhouse in that market unlawfully." *Id.* at 231 (internal quotations omitted). In *Phoebe Putney*, though the hospital authorities were granted broad authority to acquire other hospitals, this authority "mirror[ed] generally powers routinely conferred by state law upon private corporations." *Id.* at 227. Since powers afforded to private entities generally do not raise antitrust concerns, the Court held that the state legislature did not anticipate these powers would authorize anticompetitive conduct. *Id.* at 228.

However, a "broad authority to regulate" a particular industry demonstrates sufficient intent to displace the antitrust laws. *Hallie*, 471 U.S. at 42. In *Town of Hallie v. City of Eau Claire*, the Supreme Court considered whether state statutes allowing a municipality to refuse to provide sewage treatment to neighboring areas authorized anticompetitive action; specifically, the municipality attempted to leverage its sewage-treatment services into monopolies over sewage collection and transportation. *Id.* at 36–37. Though the statutes made "no express mention of anticompetitive conduct," the Court determined that the anticompetitive conduct was a logical result of the authority to withhold sewage treatment services. *Id.* at 41–42. Similarly, in *City of Columbia v. Omni Outdoor Advertising, Inc.*, state statutes that delegated zoning authority were held to be a sufficiently clear articulation of state policy to allow a city to protect a billboard provider against competition. *Omni*, 499 U.S. at 372–73. State authorization to enact zoning regulations

5

created sufficiently foreseeable anticompetitive conduct because "[t]he very purpose of zoning regulation is to displace unfettered business freedom in a manner that regularly has the effect of preventing normal acts of competition." *Id.* at 373.

We recently contemplated a state action immunity question in *Western Star Hospital Authority, Inc. v. City of Richmond*, 986 F.3d 354 (4th Cir. 2021). The Virginia legislature conferred on a local governmental agency the power to provide ambulance services in the City of Richmond. *Id.* at 357. It also granted that agency various regulatory powers including the right to "make it unlawful to operate EMS vehicles without a permit, control the issuance of permits, determine where EMS vehicles can and cannot operate, and fix the prices of EMS vehicle services." *Id.* at 358–59. These powers extended well beyond "simple permission to play in a market" and instead "greenlight[ed] regulation and service provision that necessarily supplant[ed] unrestrained market competition." *Id.* Even though the statute did not explicitly grant the agency monopoly power, we emphasized that the state statute "expressly authorized" the local authority to "control entry into the EMS vehicle services market." *Id.* at 359. As a result, this Court permitted the substate agency's monopoly over EMS vehicle services. *Id.* at 357–59.

### III.

Appellants raise two arguments on appeal. First, they argue that neither of the state statutes upon which the City and the district court relied are sufficiently clear articulations of state policy, and therefore state action immunity does not attach. Second, they urge this Court to adopt a "market participant exception" to state action immunity, which would

6

withhold state action immunity from the City because it "is engaged in the market as a participant and not in a regulatory capacity." Opening Br. 9. *Western Star* forecloses both lines of argument.

### A.

Two state statutes are relevant to the state-action immunity analysis. The first articulates general municipal powers, including the authority to "grant franchises and make charges for the use of public beaches." S.C. Code Ann. § 5-7-30. The second and more comprehensive state statute permits a municipality to enter into a contract with a private company to provide beach safety services. S.C. Code Ann. § 5-7-145. If a municipality elects to provide beach safety services by agreement with a private company, "the municipality may grant the exclusive right to the beach safety company to rent only the beach equipment and sell only the items to the public on the beach that are allowed by the municipality." *Id.*

Our decision in *Western Star* makes clear that the City is entitled to state action immunity. 986 F.3d 354 (4th Cir. 2021). As the district court correctly pointed out, S.C. Code §§ 5-7-30 and 5-7-145 "leave no doubt as to the City's prerogative to exclusively provide on-beach setup and rentals to support lifeguard services and displace competition." *Cherry Grove Beach Gear, LLC v. City of North Myrtle Beach*, 2024 WL 6841760 (D.S.C. Sept. 6, 2024). The South Carolina Code authorizes the City to provide "lifeguard and other safety related services on and along the public beaches" with either "municipal employees or by service agreement with a private beach safety company." S.C. Code § 5-7-145. The statute clarifies that the "services" which the municipality may provide or

7

contract out include "the exclusive right . . . to rent . . . beach equipment . . . on the beach." S.C. Code § 5-7-145. This provision licenses the City to grant an exclusive franchise to sell beach equipment on the beach. Section 5-7-30 confirms that the City has the authority to grant franchises for operations on public beaches. S.C. Code § 5-7-30.

CGBG does not dispute that Section 5-7-145 authorizes the City to displace competition by granting an exclusive franchise for beach equipment installation. Instead, CGBG argues that the statute does not permit the City to effectively grant *itself* the exclusive franchise, and the monopoly must instead belong to a private company.

This argument fails in light of *Western Star*. In that case, as in this one, the state legislature had explicitly granted a substate governmental agency the right to play a role in ambulance services and to implement anticompetitive regulations, but it did not explicitly grant the right to monopolize the market. *W. Star*, 986 F.3d at 356–57. However, the statute plainly anticipated that the City of Richmond could regulate in such a way that "necessarily supplant[ed] unrestrained market competition," and therefore the state policy was sufficiently articulated for the defendants to claim state action immunity. *Id.* at 359. That follows from the Supreme Court's opinions in *Hallie* and *Omni*, in which state statutes did not expressly authorize the action taken, but made sufficiently clear that the state anticipated the municipality would play an anticompetitive role in the market. The state must have "affirmatively contemplated the displacement of competition," but it is not "expected to catalog all of the anticipated effects of a statute." *Phoebe Putney*, 568 U.S. at 229; *Hallie*, 471 U.S. at 43. Where the City has the authority to establish an exclusive franchise, the state has created a "regulatory structure [that] inherently displace[d]

8

unfettered business freedom." *W. Star*, 986 F.3d at 358.  When a state grants a municipality the authority to establish a monopoly, it has plainly contemplated the displacement of competition.

Because the state statute anticipates the City playing an anticompetitive role in the market for on-beach equipment rentals, the City qualifies for state-action immunity from federal antitrust law.  The South Carolina legislature authorized the City to impose a monopoly on beach equipment installation, so the City's monopoly does not constitute unexpected anticompetitive behavior.  Indeed, it is the "very purpose" of Section 5-7-145 to "displace unfettered business freedom." *Omni*, 499 U.S. at 373.

## B.

CGBG also claims that Supreme Court precedent establishes an exception to state action immunity when "the State acts not in a regulatory capacity but as a commercial participant in the relevant market."  Opening Br. 7 (citing *Omni*, 499 U.S. at 374–75).  Since the City has anointed itself the sole participant in the market for setting up beach equipment, CGBG argues that state action immunity should not apply.

However, "[t]he Supreme Court has never recognized such an exception; in fact, it has suggested only that it might possibly exist." *W. Star*, 986 F.3d at 360 (citing *Omni*, 499 U.S. at 379).  In *Western Star*, we emphasized that the Supreme Court permitted state action immunity in *Hallie* even though the municipality was acting as a market participant, and therefore we "decline[d]" the invitation "to steer federal antitrust law into uncharted waters." *Id.*  CGBG has provided no argument that we should reconsider that conclusion.

9

CGBG urges us to hold that the district court's error on the antitrust claim triggered errors with respect to other claims.  But CGBG's threadbare arguments fall short of Federal Rule of Appellate Procedure 28's requirements, so we must consider them abandoned. *Edwards v. City of Goldsboro*, 178 F.3d 231, 241 n.6 (4th Cir. 1999).  And because we find no error in the district court's handling of CGBG's antitrust claim, we have no cause to address other issues.

IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.